1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                   **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    LARRY SERMENO,                              No.  2:25-CV-02377-TLN-DMC

12                    Plaintiff,

13          v.                                    FINDINGS AND RECOMMENDATIONS

14    JEFF MACOMBER, et al.,

15                    Defendants.

16

17              Plaintiff, who is proceeding pro se, brings this civil action. In light of the District

18    Judge's order, which dismissed Plaintiff's claims seeking declaratory and injunctive relief, and

19    allowed Plaintiff's claims for damages to proceed, the undersigned will review Plaintiff's

20    proceeding claims in accordance with 28 U.S.C. 1915(e)(2)(B).

21

22                           **I. PLAINTIFF'S ALLEGATIONS**

23              Plaintiff filed the original complaint on August 20, 2025. See ECF No. 1. Plaintiff

24    names the following as defendants: (1) California Department of Corrections and Rehabilitation

25    (CDCR); (2) Jeff Macomber; (3) Heather Bowlds; (4) Sabrina Williams; (5) Melissa Romero; and

26    (6) Amy Asher. Id. at 1.  Plaintiff contends that he "was sentenced to PRCS [Postrelease

27    Community Supervision] by the Butte County Superior Court on September 5, 2024, yet upon

28    release from CDCR custody was placed on CDCR parole supervision with harsher restrictions,

                                                      1

1    contrary to court order." Id. at 2.

2    　　　According to Plaintiff, Judge Lucena sentenced him to PRCS under California

3    Penal Code § 3451 in Butte County Superior Court case No. 24CF02944 and the probation report

4    for sentencing also recommended PRCS. See id. at 5. Plaintiff asserts that Defendants Macomber,

5    Bowlds, and Williams "approved or allowed parole intake in violation of Plaintiff's sentence" and

6    Defendants Romero and Asher "failed to initiate PRCS intake or contest CDCR's unlawful

7    jurisdictional overreach." Id. at 6. Plaintiff contends that the parole conditions he is required to

8    adhere too are "more restrictive than PRCS, including CPS monitoring, curfews, housing bans,

9    and unrelated programming requirements." Id. According to Plaintiff, these additional

10    requirements, such as attendance of counseling programs, "places him at a high risk of losing

11    employment due to scheduling conflicts." Id. at 7. Plaintiff asserts these actions were "deliberate"

12    and are part of a "pattern or practice of PRCS-to-parole reassignment without due process" that

13    "disproportionately impact Black individuals." Id. at 6-7.

14    　　　Plaintiff asserts fifteen claims for relief, including violations of his Fifth and

15    Fourteenth Amendment due process rights, violation of equal protection rights under the

16    Fourteenth Amendment, prohibiting Plaintiff's access to courts in violation of the First

17    Amendment, excessive punishment in violation of the Eighth Amendment, involuntary servitude

18    violation of the Thirteenth Amendment, Monell and Supervisory liability, and conspiracy to

19    interfere with Plaintiff's civil rights. Plaintiff requests declaratory relief, injunctive relief to

20    change Plaintiff to PRCS, compensatory damages, punitive damages, and attorneys' fees. Id. at

21    13-15. Plaintiff attached information about PRCS, including how such status is determined, to the

22    complaint. See ECF No. 1-3. That information appears to be from the CDCR website. See id.

23    　　　On August 20, 2025, Plaintiff filed a motion for judicial notice. See ECF No. 7. In

24    that notice, Plaintiff informs the Court that on August 4, 2025, Plaintiff appealed his conviction to

25    the California Court of Appeal. See id. at 1.  According to Plaintiff, the appeal "addresses the

26    same factual nucleus underlying this federal complaint." Id. at 2. Plaintiff asserts that filing of the

27    appeal "establish[es] the contemporaneous pursuit of parallel remedies . . . [and] Plaintiff's

28    diligence and exhaustion of available state remedies." Id. at 3.

1

2                                    **II. DISCUSSION**

3              On November 25, 2025, the District Judge adopted the findings and

4   recommendations in part, permitting Plaintiff's claims for damages to proceed and dismissing

5   Plaintiff's claims for declaratory and injunctive relief without prejudice on the basis of Younger

6   abstention doctrine. See ECF No. 14. The District Judge additionally referred the matter back to

7   the undersigned "for further proceedings, including any further 28 U.S.C. 1915(e)(2)(B) review,

8   if necessary, and assessment of whether it is appropriate to enter a stay of this action based on

9   Ninth Circuit precedent." Id. at 2-3. The undersigned finds that, in light of the District Judge's

10  order, further review under 28 U.S.C. 1915(e)(2)(B) is necessary.

11             The Court is required to screen complaints brought by litigants who, as here, have

12  been granted leave to proceed in forma pauperis.  See 28 U.S.C. § 1915(e)(2).  Under this

13  screening provision, the Court must dismiss a complaint or portion thereof if it: (1) is frivolous or

14  malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief

15  from a defendant who is immune from such relief.  See 28 U.S.C. §§ 1915(e)(2)(A), (B).

16  Moreover, pursuant to Federal Rule of Civil Procedure 12(h)(3), this Court must dismiss an

17  action if the Court determines that it lacks subject matter jurisdiction.  Pursuant to Rule 12(h)(3),

18  the Court will also consider as a threshold matter whether it has subject-matter jurisdiction.

19             Plaintiff's claims against CDCR and individuals in their official capacity are

20  barred by Eleventh Amendment immunity and therefore, the undersigned will recommend

21  dismissal of such claims, with prejudice. Plaintiff's claims against Defendant Bowlds may be

22  subject to a bar based on  absolute parole official immunity, but as currently pled, there are

23  insufficient facts to determine whether Defendant Bowlds took actions that resulted in the alleged

24  constitutional violations and whether such actions were taken when deciding to grant, deny, or

25  revoke parole, which would extend parole official immunity over such claims. Plaintiff's

26  remaining claims against Defendants Macomber, Williams, Romero, and Asher in their individual

27  capacities are conclusory and therefore fail to establish that their actions resulted in Plaintiff's

28  alleged constitutional violations. As explained further below, the undersigned will therefore

                                            3

recommend the remaining claims against Defendants Macomber, Bowlds, Williams, Romero, and Asher in their individual capacities be dismissed with leave to amend.

### A.    Eleventh Amendment Immunity

The Eleventh Amendment prohibits federal courts from hearing suits brought against a state both by its own citizens, as well as by citizens of other states.  See Brooks v. Sulphur Springs Valley Elec. Coop., 951 F.2d 1050, 1053 (9th Cir. 1991).  This prohibition extends to suits against states themselves, and to suits against state agencies.  See Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).   A state's agency responsible for incarceration and correction of prisoners is a state agency for purposes of the Eleventh Amendment.  See Alabama v. Pugh, 438 U.S. 781, 782 (1978) (per curiam); Hale v. Arizona, 993 F.2d 1387, 1398-99 (9th Cir. 1993) (en banc).

The Eleventh Amendment also bars actions seeking damages from state officials acting in their official capacities.  See Eaglesmith v. Ward, 73 F.3d 857, 859 (9th Cir. 1995); Pena v. Gardner, 976 F.2d 469, 472 (9th Cir. 1992) (per curiam).  The Eleventh Amendment does not, however, bar suits against state officials acting in their personal capacities.  See id.

Here, Plaintiff asserts claims for monetary damages against Defendant CDCR and all other Defendants in their individual and official capacities. Under the Eleventh Amendment, CRCR and officials sued in their official capacity are immune from such claims. See Alabama v. Pugh, 438 U.S. 781, 782 (1978) (per curiam); Eaglesmith v. Ward, 73 F.3d 857, 859 (9th Cir. 1995).  Accordingly, the undersigned will recommend dismissing all claims against CDCR and any claims against the remaining Defendants in their official capacities, with prejudice.

### B.    Parole Board Official Immunity

Because ". . . parole board officials perform functionally comparable to tasks to judges when they decide to grant, deny, or revoke parole," parole board officials are entitled to absolute immunity from suits by prisoners for actions taken when processing parole applications. See Sellars v. Procunier, 641 F.2d 1295, 1302-03 (9th Cir. 1981); see also Bermudez v. Duenas, 936 F.2d 1064, 1066 (9th Cir. 1991) (per curiam).

/ / /

Plaintiff brings claims against Defendant Bowlds, the Acting Director of Adult Parole Operations. To the extent that such claims arise from Defendant Bowlds' determination of Plaintiff's parole, parole board official immunity would extend to such claims. However, Plaintiff's complaint is not clear as to what actions Defendant Bowlds specifically took that resulted in the alleged deprivation of Plaintiff's constitutional rights. Accordingly, as currently pled, it is unclear whether claims against Defendant Bowlds arise from the parole board determination. Thus, the undersigned will recommend dismissing claims against Defendant Bowlds, with leave to amend.

C.    **Qualified Immunity**

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In general, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. See Saucier v. Katz, 533 U.S. 194, 201 (2001). If a violation can be made out, the next step is to ask whether the right was clearly established. See id. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Id. "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 202 (citation omitted). Thus, the final step in the analysis is to determine whether a reasonable officer in similar circumstances would have thought his conduct violated the alleged right. See id. at 205.

When identifying the right allegedly violated, the court must define the right more narrowly than the constitutional provision guaranteeing the right, but more broadly than the factual circumstances surrounding the alleged violation. See Kelly v. Borg, 60 F.3d 664, 667 (9th Cir. 1995). For a right to be clearly established, "[t]he contours of the right must be sufficiently

5

1   clear that a reasonable official would understand [that] what [the official] is doing violates the

2   right."  See Anderson v. Creighton, 483 U.S. 635, 640 (1987).  Ordinarily, once the court

3   concludes that a right was clearly established, an officer is not entitled to qualified immunity

4   because a reasonably competent public official is charged with knowing the law governing his

5   conduct.  See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982).  However, even if the plaintiff

6   has alleged a violation of a clearly established right, the government official is entitled to

7   qualified immunity if he could have ". . . reasonably but mistakenly believed that his . . . conduct

8   did not violate the right."  Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001); see

9   also Saucier, 533 U.S. at 205.

10          The first factors in the qualified immunity analysis involve purely legal questions.

11  See Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996).  The third inquiry involves a legal

12  determination based on a prior factual finding as to the reasonableness of the government

13  official's conduct.  See Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995).  The district court

14  has discretion to determine which of the Saucier factors to analyze first.  See Pearson v. Callahan,

15  555 U.S. 223, 236 (2009).  In resolving these issues, the court must view the evidence in the light

16  most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff.  See

17  Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

18          Here, Plaintiff explicitly brings the claims for damages against Defendants

19  Macomber, Bowlds, Williams, Romero, and Asher in their individual capacities. Plaintiff makes

20  general assertions such as "Defendants failed to implement the PRCS order . . . Each Defendant

21  had access to the sentencing records yet failed to disclose or act upon the PRCS designation . . .

22  [and] Defendants omitted the PRCS status from communications and treated Plaintiff as a

23  parolee, concealing unlawfulness of this designation." ECF No. 1, pgs. 5-6. Plaintiff's allegations

24  are conclusory and fail to demonstrate how each specific Defendants' conduct resulted in the

25  alleged deprivation of Plaintiff's constitutional rights. Thus, Plaintiff's allegations do not show

26  the defendant's conduct violated a constitutional right.  See Saucier v. Katz, 533 U.S. 194, 201

27  (2001).  Accordingly, the undersigned will recommend dismissing Plaintiff's claims against

28  Defendants Macomber, Bowlds, Williams, Romero, and Asher in their individual capacity, with

6

leave to amend.

### III. CONCLUSION

Based on the foregoing, the undersigned recommends that:

1.      Defendant California Department of Corrections and Rehabilitation (CDCR) be dismissed without leave to amend due to Eleventh Amendment Immunity;

2.      All claims brought against any Defendant in their official capacity be dismissed without leave to amend under Eleventh Amendment Immunity;

2.      All claims against Defendant Heather Bowlds in her individual capacity be dismissed with leave to amend;

3.      Remaining claims brought against Defendants Macomber, Bowlds, Williams, Romero, and Asher in their individual capacities, be dismissed with leave to amend.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  December 8, 2025

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

7